IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

TIMOTHY J. THOMAS,           )
                             )
        Plaintiff,           )
                             )
v.                           )      CASE NO. 1:16-cv-542-RAH-JTA
                             )            [WO]
AUTO-OWNERS INSURANCE        )
COMPANY, *et al.*,           )
                             )
        Defendants.          )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the parties' respective motions to strike or limit the testimony of the other party's expert witnesses. (Docs. 155, 157.)  In particular, Plaintiff Timothy J. Thomas moves to strike, or alternatively, to limit the testimony of Taylor Flowers, a litigation defense attorney based in Dothan, Alabama. Defendant Auto-Owners Insurance Company (Auto-Owners) moves to strike, or alternatively, to limit the testimony of Stuart Setcavage, an insurance claims handling expert, and Tom Burgess, a litigation defense attorney based in Birmingham, Alabama. For the following reasons, the Court will grant these motions, in part.

# I.    BACKGROUND

This is a bad faith, failure-to-settle case arising out of a $3.8 million jury verdict issued against Thomas, who at the time of the motor vehicle accident made the basis of the underlying litigation, was insured under an automobile insurance policy issued by Auto-Owners. While the general facts and allegations in this case are set out in further detail in the Court's separately-issued summary judgment opinion, the crux of the current litigation concerns Auto-Owners' failure to settle the underlying case within policy limits when it had multiple opportunities to do so. Auto-Owners has since satisfied the underlying judgment in total.

In broad terms, Thomas and his two experts assert that Auto-Owners acted contrary to industry standards, unreasonably, and in bad faith; claims which Auto-Owners and its expert deny. Both parties advance experts who largely will direct opinions to these subject matters, but from contrasting viewpoints. Now, both parties seek to strike and exclude the opinions of the other party's expert for substantially similar reasons.

# II.    THE EXPERTS AND THEIR GENERAL OPINIONS

## A. Plaintiff Expert - Stuart J. Setcavage

Stuart J. Setcavage of Setcavage Consulting, LLC has been disclosed as an expert witness for Thomas in the area of industry standards for insurance claims handling. (Doc. 112-1.)

Setcavage is based in Pennsylvania and was employed at State Farm Mutual Automobile Company for over 24 years, during which time he handled over 25,000 claims. (*Id.* at 4). His expert testimony has been admitted in courts throughout Alabama and various other state and federal courts. (*Id.*) He maintains adjuster's licenses in Texas, Florida, and West Virginia, which allow him reciprocity in Alabama. (*Id*. at 5.) He is familiar with insurance industry standards, customs and policies, and the Auto-Owners claims manual.

Setcavage intends to testify to his opinions concerning Auto-Owners' handling of Thomas' claim and its refusal to settle the underlying case before trial. In addition to offering opinions about what Auto-Owners should have done—such as settling the case within policy limits when settlement demands within those limits were made—and opining whether Auto-Owners acted in conformity with industry standards, Setcavage proposes to comment and opine upon Auto-Owners' conduct and intent during the claims handling process. Specifically, he proposes to state that: Auto-Owners was intentionally deceitful (*id*. at 14); recklessly disregarded the policy limits demand and information provided (*id.* at 18); acted as a fiduciary to the insured (*id*. at 20); made arbitrary and capricious settlement offers (*id.* at 25); decided to take the case to trial to save some of its policy limits (*id*. at 26); failed to act honestly and in good faith (*id.* at 28); had duties to exercise ordinary diligence (*id.* at 27); chose to gamble (*id*. at 24, 28); made a distinction between an insured

3

who paid its premiums and one who does not (*id*. at 28); and acted in an arbitrary, inflexible manner that was indifferent to the consequences of the insured and in contravention of claim handling principles and Alabama law (*id*. at 29, 30). All of these failures, according to Setcavage, caused an excess judgment against Thomas, Auto-Owners' insured. (*Id*. at 28.)

## B. Plaintiff Expert - Tom Burgess

Burgess has been disclosed as an expert witness for Thomas in two areas: insurance defense litigation and insurance claims handling.  Burgess is an attorney based in Birmingham, Alabama, and has been practicing primarily insurance defense law since 1980. Before he became an attorney, Burgess spent 10 years (in the 1970's) working in the claims departments of two casualty insurance companies. (Docs. 112-3 at 2; 122-1 at 10.)

Burgess will testify to various opinions regarding Auto-Owners' handling of the claim and its refusal to settle the underlying case pre-trial. Most of his opinions largely echo Setcavage's concerns about Auto-Owners' handling of Thomas' claim. Burgess will also provide his own opinion as to the settlement value of the underlying claims and his basis for that calculation.

One key difference between Burgess and Setcavage is that Burgess is a practicing attorney—not a practicing insurance claims professional.

## C. Defense Expert – Taylor Flowers

Taylor Flowers has been disclosed by Auto-Owners as an expert in the field of civil litigation defense. He is a Dothan, Alabama-based litigation attorney who primarily represents defendants in civil matters and who regularly mediates cases.

Flowers intends to testify, among other things, that: Auto-Owners acted reasonably in not settling Thomas' case before trial and in handling the bond secured for an appeal; Auto-Owners did not act negligently or in bad faith in relying upon Merrill Shirley, a seasoned defense attorney; Shirley made a reasonable case and settlement analysis and evaluation; Shirley's handling of Thomas' case was proper and appropriate; Thomas' trial testimony about alcohol was a surprise and had a great influence on the jury; and the "med pay" issue is irrelevant to the disputes in this case. (Doc. 104-1 at 5–7.)

### III.    LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702.  Fed. R. Evid. 702. This rule requires a district court to engage in a three-prong inquiry to decide whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in [*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993)]; and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (*quoting City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 561 (11th Cir. 1998)).

Because expert testimony must assist the trier of fact, this testimony is only admissible "if it concerns matters that are beyond the understanding of the average lay person. [...] Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63 (internal citation omitted).

The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256–57 (11th Cir. 2002).

A district court is to serve as a gatekeeper, but this role is "is not intended to supplant the adversary system or the role of the jury." *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) (quoting *Allison v. McGhan Med. Corp*., 184 F.3d 1300, 1311 (11th Cir. 1999)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## IV.   DISCUSSION

### A.  Admissibility of Expert Testimony

Each party attacks the admissibility of the other party's expert opinions. The Court considers each expert in turn.

### 1. Setcavage

Auto-Owners challenges not only Setcavage's qualifications, but also his methodology and ability to assist the trier of fact.

As to his qualifications, the Court concludes that Setcavage is sufficiently qualified to testify about insurance industry standards and claims practices, policies and procedures relevant to the adjustment and settlement of claims, and settlement evaluations for claims handling and resolution purposes.

Setcavage has more than twenty years of experience working in the insurance industry and in handling, supervising, negotiating, and settling automobile claims. He has also participated in various training programs related to his profession. According to his report, his educational background and professional activities—which include teaching seminars and workshops to insurance professionals and consulting with insurers and insureds—have allowed him to become familiar with the practices, customs, and procedures relevant to casualty insurance policies, coverages, and claim practices. He has extensive expertise in national industry standards, including those contained in the model acts, the National Association of Insurance Commissioners regulations, policies, guidelines, and training materials of casualty insurance companies. Setcavage has given expert testimony, consulted on, and been retained in other cases in Alabama. He also holds an "all-lines" insurance adjusting license in Texas, Florida, and West Virginia, all of which have reciprocity

agreements with Alabama. This experience sufficiently qualifies Setcavage to testify about insurers' standard practices and expectations. *See, e.g., Bottini v. Geico Gen. Ins. Co.*, No. 8:13-CV-365-T-17AEP, 2014 WL 7273934, at *2 (M.D. Fla. Dec. 19, 2014) (denying motion to strike Stuart Setcavage and allowing him to testify on whether Geico's handling of an uninsured motorist claim did not conform to industry standards); *Sheperd v. UnumProvident Corp*., 381 F. Supp. 2d 608, 610 (E.D. Ky. 2005) (concluding a similarly situated proposed expert was qualified by virtue of her knowledge about the insurance industry).

Despite his extensive experience, Auto-Owners argues that Setcavage's opinions should be excluded because: (1) the only source undergirding his opinions is the National Association of Insurance Commissioner's Model Act; (2) it does not "operate[ ] as the source of legal standards governing AO's actions" because Alabama has not adopted the Act; and therefore (3) Setcavage "seeks to apply Pennsylvania standards to an Alabama case applying Alabama law." (Doc. 157 at 9–11.) Thomas disputes this.

From what has been presented to this Court, it appears that Setcavage's opinions are based on "[i]nsurance industry claim handling standards," which result from "common practices, industry standards, industry norms and the claim handling fundamentals that are routinely taught to insurance professionals." (Doc. 112-1 at 6.) Furthermore, these standards are not unique to Alabama but rather "appl[y]

8

universally across all jurisdictions." (*Id.*) The standards "have been established and developed over many years and are taught and applied universally across all jurisdictions." (*Id.*) Setcavage "review[ed] the claims manuals and best practices guidelines from many insurance companies across the United States," including Auto-Owners' claim manual in this case, "in addition to reading many deposition transcripts taken of corporate designees and claims professionals" in cases across the country, and concluded, "it is evident that the standards as applied herein are well known and accepted insurance claims practices that have been universally adopted." (*Id.* at 7.)

Setcavage's testimony concerns insurance industry claims handling customs and practices, and what prudent insurers should do under similar circumstances. Auto-Owners' argument fails because this testimony is relevant and admissible regardless of the applicable bad-faith standard. *See Bottini v. Geico Gen. Ins. Co.*, No. 8:13-CV-365-T-17AEP, 2014 WL 7273934, at *2–3 (M.D. Fla. Dec. 19, 2014) (rejecting argument that Setcavage is unqualified to testify about Florida bad faith claim because he has lived and worked outside Florida, concluding that "witness Setcavage holds an all lines insurance adjusting license in Texas, which has a reciprocity agreement with Florida."); *Seikel v. Am. Med. Sec. Life Ins. Co.*, No. CIV-05-1403-T, 2007 WL 4864462, at *3 (W.D. Okla. May 11, 2007) ("Plaintiffs also challenge Randall's qualifications because she has not previously offered an

expert opinion regarding Oklahoma's law of bad faith. Plaintiffs offer no authority to support the contention that, to be qualified as an expert, a witness must have previous experience with the law of a specific state.").

Moreover, testimony like that of Setcavage, previously has been admitted in third-party bad-faith cases that use the totality-of-circumstances test, or something similar. *See Est. of Jorge Luis Arroyo, Jr. v. Infinity Indem. Ins. Co.*, No. 15-20548-CIV, 2016 WL 4506991, at *4 (S.D. Fla. Aug. 29, 2016); *Lopez v. Allstate Fire & Cas. Ins. Co.*, No. 1420654CIVCOOKETORRE, 2015 WL 6447497, at *3 (S.D. Fla. Oct. 26, 2015); *Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1368–69 (N.D. Ga. 2014). *See also Kearney v. Auto-Owners Ins. Co.*, No. 8:06-CV-595T24TGW, 2009 WL 3712343, at *10 (M.D. Fla. Nov. 5, 2009), *aff'd*, 422 F. App'x 812 (11th Cir. 2011) (permitting experts to opine on "what ordinary and reasonable claims handling practices consist of and whether or not [an insurer] complied with those standards"); *Carrier Express Inc v. Home Indem. Co.*, 860 F. Supp. 1465, 1477–78, 1483 (N.D. Ala. 1994) (considering expert testimony in third-party bad-faith action regarding "the usual conduct of insurers" and what a "prudent insurer" would have done under the circumstances).

His testimony has likewise been admitted in first-party bad-faith cases, which apply an arguable and debatable standard. *Standard Plan, Inc. v. Tucker*, 582 So. 2d 1024, 1027–29, 1033 (Ala. 1991) (holding that, in a first-party bad-faith action, an

expert's opinion as to insurance industry standard was admissible as long as a proper foundation was laid).

In attacking Setcavage, Auto-Owners repeatedly argues that Setcavage should be excluded because he provides opinions based on hindsight. If that were the standard by which expert testimony was governed, then in most circumstances, an expert would be excluded. However, that is not the standard, as the Eleventh Circuit expressly rejected that argument in *Adams v. Lab. Corp. of Am.* 760 F.3d 1322, 1334–36 and n.7 (11th Cir. 2014) (per curiam) (reversing the district court's exclusion of expert testimony due to review bias—"a form of hindsight bias"—and noting that hindsight goes to the weight of the expert's testimony, not its admissibility). Thus, any potential hindsight concerns go to the weight, not the admissibility, of Setcavage's opinions.

But, although Setcavage is qualified and his opinions appear to be generally admissible, that does not mean that he will be allowed to testify to every opinion he has outlined in his report. The Court's limitations on those opinions will be set forth below.

### 2.  Burgess

Burgess is a licensed attorney in Alabama who generally practices civil litigation defense but anticipates testifying to certain insurance industry practices, settlement evaluations, and attorney conduct. Burgess has the added qualification of

having worked for two insurance companies for 10 years, albeit over 40 years ago. During that time, he worked as an insurance claims adjuster and appraiser and handled workers' compensation, complex property loss, complex casualty loss, and complex casualty claims. He was also responsible for monitoring litigation files, participating in mediations on behalf of the company, and testifying as a corporate representative.

According to his CV, Burgess has taught torts and insurance law, spoken at CLE seminars for claims professionals and attorneys, and professes to specialize in insurance coverage matters. (Docs. 112-3 at 2; 112-4 at 2.)

Burgess' report reflects that he is being offered as an expert witness from two perspectives—an attorney and an insurance claims professional. As it concerns his opinions from an attorney's perspective, the Court concludes that Burgess is sufficiently qualified, although the scope of those opinions will be further clarified below.

From the perspective of an insurance claims professional, the Court has reservations concerning Burgess' knowledge, skill, experience, training, or education about the insurance industry to testify about industry standards from the perspective of a claims handling expert. The alleged bad faith conduct at issue here occurred from 2013 to 2015. However, Burgess' employment experience as a claims professional was over forty years ago, in the 1970s. Further, the fact that he may

have taught CLEs to claim professionals and attorneys on a variety of subjects, including "insurance law" and insurance coverage, does not, on the current record before the Court, render him sufficiently qualified to provide opinions from the perspective of an insurance claims professional. The fact that Burgess is an insurance defense attorney who handles insurance coverage disputes, represents insureds, and teaches the occasional CLE program does not necessarily qualify him to testify as a claims handling expert. Nevertheless, the Court reserves until trial its final determination concerning Burgess' ability to provide opinions from a claims professional perspective.

### 3. Flowers

Flowers has been practicing law as a civil defense litigator for over 36 years and has provided evaluations to insurance companies in the same manner as Merrill Shirley, the retained defense attorney who represented Thomas in the underlying case. He also has served as a mediator for over 400 cases, and in that capacity, has provided case evaluations to attorneys, carriers, and their insureds. After due consideration of the above qualifications, this Court finds that Flowers is sufficiently qualified to advance expert opinions as an attorney regarding: the case settlement evaluation process in general; the settlement evaluation in Thomas' case conducted by Shirley; Shirley's actions; and an insurance company's general reliance on the evaluations and recommendations prepared by assigned defense counsel. However,

Flowers is not qualified to express opinions regarding the insurance industry standards applicable here, whether Auto-Owners may or may not have breached them, and what weight Auto-Owners should have given the settlement evaluations prepared by Shirley.

## B.      The Experts' Opinions

Because the parties each present experts who intend to provide opinions generally on the same subject matters, some of which are equally excludable, the Court will address the parties' motions to strike in summary form. Although the Court does so for purposes of this order, the parties are free to raise any objections and issues again during trial. However, for now, the following general categories of opinions are either allowed or excluded as outline below.

### 1.      Industry Standards and Legal Conclusions

Each party criticizes the other's expert opinions as inadmissible legal conclusions. The Eleventh Circuit has remarked that "the law in this circuit pertaining to the admissibility of an expert's opinion couched in legal terms is not crystal clear." *Hanson v. Waller*, 888 F.2d 806, 811 (11th Cir. 1989). Nonetheless, there are several well-defined guideposts to shape the analysis.

The Federal Rules of Evidence specify that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Instead, the general rule is that "testifying experts may not offer legal conclusions." *Cook ex rel. Est. of*

14

*Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005). Further, an expert witness may not testify as to the legal implications of conduct or merely tell the jury what result to reach on the ultimate issue of fact. *See Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir. 1990); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

Nevertheless, it is proper for a qualified expert witness to testify about insurance industry practices and procedures. *See, e.g.*, *Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1366 (N.D. Ga. 2014) ("[A]n insurance expert may testify regarding what duties are owed by an insurance company during the claims handling process and whether the actions of the insurance company complied with those duties without offering improper legal conclusions.") (citation omitted); *Royal Marco Point 1 Condo. Ass'n v. QBE Ins. Corp.*, 2011 WL 470561, *4 (M.D. Fla. Feb. 2, 2011) (allowing expert opinions comparing defendant insurer's claims handling practices to what is standard and typical in the industry).

An expert may properly testify as to facts that relate to a legal standard, so long as he or she does not offer opinions as to whether that legal standard has been met. *See, e.g.*, *Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015) ("An expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied.") (quotation omitted); *Camacho*, 13

F. Supp. 3d at 1366 (citing as an example of proper testimony an attorney expert opinion that a statement in a prospectus was standard language because such information helped the jury evaluate defendants' scienter).

Here, in large part, many of the proffered expert opinions—especially those by Setcavage and Burgess—"merely tell the jury what result to reach." Indeed, many of the opinions are simply echoes of the lawyers' potential closing argument to the jury. Such argument and legal conclusions are unhelpful to the jury and are inadmissible. *See Cook*, 402 F.3d at 1111 ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.") (citations omitted).

Therefore, the Court will broadly lay out the permissible opinions and distinguish them from impermissible opinions based upon the parties' filings. First, Setcavage may offer opinions about industry standards and practices applicable to Auto-Owners' handling of the underlying litigation, Auto-Owners' claims handling procedures, and Auto-Owners' deviations from those standards or Auto-Owners' own policies and procedures. *See Ala. Gas Corp. v. Travelers Cas. and Sur. Co*., No. CV-10-J-1840-S, 2011 WL 10525703, at *1 (N.D. Ala. Dec. 12, 2011) (admitting expert testimony in first-party bad-faith case regarding whether the insurer's procedures and actions were "in accordance with industry standards and practice."); *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-CV-595T24TGW, 2009 WL 3712343,

16

at *10 (M.D. Fla. Nov. 5, 2009), *aff'd*, 422 F. App'x 812 (11th Cir. 2011) (permitting experts to opine on "what ordinary and reasonable claims handling practices consist of and whether or not [an insurer] complied with those standards").

But Setcavage may not offer his opinion on a question or conclusion of law, the legal implication of Auto-Owners' conduct, or his own characterization as to the reprehensible nature of that conduct. Therefore, neither Setcavage nor the other experts may offer opinion testimony that Auto-Owners acted negligently, wantonly, indifferently, recklessly, arbitrarily, capriciously, in bad faith, not in good faith; that Auto-Owners did not make good faith efforts to settle the underlying claims; that Auto-Owners violated *L&S Roofing* or Alabama law; or that Auto-Owners lacked a reasonable basis to refuse to promptly pay. Similarly, Setcavage also cannot testify that Auto-Owners failed or breached its duties or obligations or any other duties; that it failed to exercise ordinary diligence; or that these failures caused the underlying judgments to be entered against Thomas.

Setcavage likewise may not testify that Auto-Owners or its employees were intentionally deceitful; that Auto-Owners consciously or recklessly disregarded the policy limits demands; that Auto-Owners did not invite Thomas to the mediation because it would put pressure on Auto-Owners to settle; that Auto-Owners wanted to take the case to trial to save policy limits; that Auto-Owners chose to gamble; that Auto-Owners made a distinction between insureds who paid premiums and those

who did not; or that Auto-Owners placed its financial interests over those of Thomas. These opinions, and anything similar, constitute improper speculation and conjecture.

The Court will permit Setcavage, Burgess, and Flowers to give opinions regarding the settlement and potential verdict ranges of the underlying case because claims professionals and defense attorneys are usually tasked with developing and providing these evaluations in their respective roles in a tort case. Therefore, Setcavage can testify to settlement and verdict ranges and values from the perspective of an insurance claims adjuster, and Burgess and Flowers can testify to these from the perspective of a defense attorney. These opinions are relevant to Thomas' assertion that the claims evaluations in the underlying case were "ridiculously" or abnormally low under the totality-of-the-circumstances test.  In addition, the Court will allow these experts to give an opinion as to whether the underlying claimants' settlement demands were reasonable or unreasonable given the circumstances, as claims professionals and defense attorneys are often called upon to assess the settlement demands of tort claimants.

With regard to Burgess, should the Court ultimately deem Burgess to be sufficiently qualified to give insurance industry practices opinions, Thomas' counsel should be on notice that the Court may exclude any opinions that are duplicative of Setcavage's opinions, or vice versa, on the same subject. As such, counsel should be

mindful of its strategy in choosing which opinions to elicit, by whom, and when.

As it relates to Flowers, Auto-Owners acknowledges that Flowers is not being offered as an expert in insurance company claims handling or industry standards and practices, but instead, is being offered as a litigation defense expert who will largely address issues relating to Merrill Shirley, his actions, and the settlement evaluations. However, a review of Flowers' expert report reveals that the scope of Flowers' proposed opinions bleeds into off-limits areas of insurance industry practices and standards. Flowers will not be permitted to give those opinions that are squarely within the expertise of a qualified claims professional. To the extent Flowers can reference insurance company practices, Flowers can testify that insurance companies often request defense counsel to provide evaluations and that defense attorneys often provide insurance companies with their opinions for purposes of claims administration and settlement.

### 2.     Supersedeas Bond

Thomas' experts, primarily Setcavage, propose to opine that regardless of what the Auto-Owners insurance policy may have stated, Auto-Owners should have procured and paid for the supersedeas bond for Thomas' appeal because of its decision to try the case, rather than settle it.  The experts will not be permitted to testify that Auto-Owners should or should not have provided a supersedeas bond to Thomas or that its actions in failing to procure the bond were wrongful, dishonest,

or in bad faith. Whether or not a bond should have been provided turns strictly on the language in the Auto-Owners insurance policy. Expert testimony is not needed to explain or interpret that language, and therefore expert testimony is not helpful to the trier of fact.

Instead, it appears from reviewing the policy that Auto-Owners was not contractually required to procure the appeal bond, and therefore allowing Thomas' experts to opine that Auto-Owners was under some other theoretical duty to do so, not only conflicts with the policy but also invites jury confusion. *Frazier*, 387 F.3d at 1263 (stating that testimony can be excluded under Rule 403 if the probative value of the expert testimony is substantially outweighed by its potential to confuse or mislead the jury, or if it is cumulative or needlessly time consuming).

### 3.  Comments on Thomas' Trial Testimony

In his report, Flowers states that he intends to offer an opinion that Thomas' trial testimony came as a "complete surprise." Flowers will not be permitted to testify that Thomas' trial testimony came as a surprise or that it had a great effect on the jury. Such opinion testimony is speculative, without foundation, irrelevant, and confusing.

Furthermore, counsel shall note that this proposed opinion testimony delves into the exact issue that Auto-Owners otherwise spends great efforts to keep out; that is, attempts by Thomas to "re-try" the underlying case and to inject what happened

at the trial into this litigation. As such, if defense counsel intends to pursue this line of opinion testimony, counsel may very well open the door for the admission of other underlying trial testimony.

## V.   FINAL THOUGHTS

The Court notes that both parties have well-qualified counsel who are fully capable of cross-examining the other's experts on the strengths and weaknesses of their proffered opinions. Even in the aftermath of *Daubert*, it remains true that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Rosenfeld v. Oceana Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citations omitted). The purported infirmities identified by each party of the other's expert witnesses may be fertile ground for cross-examination, but they do not fairly implicate *Daubert* gatekeeping principles.

And finally, the Court is aware that it has not addressed every opinion of the three experts that has been challenged. The parties are all guilty of throwing the proverbial kitchen-sink of opinions at the other, without making a realistic assessment of what likely is admissible opinion testimony and what is not under governing federal standards. As such, the Court may eventually strike other proffered opinions that have not been specifically addressed in this order.

## VI.   CONCLUSION

Based upon the foregoing, it is ORDERED that the motions to strike (Docs.

155, 157) are GRANTED in part as set out in this order.

**DONE** on this the 24th day of January, 2022.

_____/s/ R. Austin Huffaker, Jr._____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE
